Wayne H. **KEETH**, Appellant,

v.

**PHILLIPS PETROLEUM COMPANY**, Appellee.

No. 8250.

Court of Civil Appeals of Texas, Amarillo.

June 12, 1972.

Rehearing Denied June 30, 1972.

Edwards & Associates (James R. Edwards), Lubbock, for appellant.

C. J. Roberts and Jerry J. Miller, Gibson, Ochsner, Adkins, Harlan & Hankins (Joe Harlan), Amarillo, for appellee.

JOY, Justice.

This suit was initiated by plaintiff-appellant for injuries suffered in an accident while unloading pipe from the defendant-appellee's truck. The trial court granted appellee's motion for an instructed verdict and appellant prosecuted this appeal.

Affirmed.

Phillips Petroleum Company, defendant-appellee, ordered one of its truck drivers, Mr. Braymer, to deliver pipe to a job site where appellee was having a plant addition constructed. Pursuant to his instructions, Braymer obtained pipe from two or three pipe suppliers. Braymer assisted in the loading of the pipe onto the truck. On October 11, 1968, Braymer drove the pipe load from Borger, Texas, to the construction site near Dumas, Texas. Upon his arrival at the job site with the load of pipe, Braymer parked the truck and a crew of pipe fitters, employed by Robinson Industrial Contractors, was assigned by their foreman to help in the unloading operations. Mr. Keeth, appellant, was a member of that crew. The "boomer" chains, which

were used to help secure the pipe onto the trailer, were removed. Keeth and Mr. Taylor, Robinson Industrial Contractors' foreman who supervised Keeth's work, mounted the truck and unloaded two or three joints of pipe. Keeth was positioned in front of the load or between the cab and the pipe and Taylor was to the rear of the load. Taylor stepped down from the truck bed and ordered Mr. Atchison, another member of the crew, onto the truck to assist with the unloading operations. Atchison climbed onto the back of the truck as instructed. Moments later the pipe "swarmed," [1] knocking Keeth to the ground causing him severe bodily injuries.

Keeth's negligence action, a suit for damages sustained in the accident, is primarily based on Phillips' alleged negligence in the improper loading of the pipe by its agent, employee or servant. Testimony in the trial court revealed that the pipe were randomly loaded, i. e., small pipes scattered throughout the load so that large pipes, ten to fourteen inches in diameter, were resting on small pipes, one to one and a half inches in diameter. It was also established that there were approximately three rows of pipe stacked horizontally on the truck's trailer. The row uppermost from the bed of the trailer contained several joints of larger pipe, one of them containing about ten joints of smaller one or one and a half inch pipes. The larger pipe bearing the smaller pipe was five feet shorter than the smaller pipe that were loaded into it.

Taylor, appellant's supervising foreman, a man with 27 years of experience as a pipe fitter, was asked on direct examination to illustrate his testimony by sketching the random method by which the pipe was loaded on the truck. The sketch by Taylor was drawn from the perspective of one looking at the back of the loaded pipe. It revealed a random load of pipe with some small pipe on the bottom of the load as well as small pipe being intermixed throughout the load of larger and smaller pipe. Furthermore, the sketch indicated that near the top of the load there was a large pipe with a smaller pipe placed inside. This diagram was admitted into evidence as plaintiff's exhibit number one. Taylor further testified that the pipe loaded as depicted in his sketch is a hazardous method of loading pipe. On cross-examination, Taylor admitted to having made an inspection of the pipe load.

Appellant's sole contention on appeal is that the trial court erred in instructing a verdict for appellee because there were unresolved issues of fact pertaining to the dangerous condition of the load, knowledge on the part of appellant's supervisor and the supervisor's appreciation of the danger of the condition.

██ It is beyond dispute in this state that an occupier of land or premises owes a duty to his invitees to keep his land or premises in a reasonably safe condition for his invitees. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425 (1950). Also, well established is that if dangers are present which are not open and obvious, the occupier is under a duty to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them of the same. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex. Sup.1963); Western Auto Supply Company v. Campbell, 373 S.W.2d 735 (Tex.Sup. 1963). When any duty is owed to an occupier's invitees, including the employees of an independent contractor, to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, full knowledge of the dangerous condition on the part of the invitees, or the independent contractor, as the

---

1. The only definition of the term "swarm" found in the record is in the testimony of plaintiff's expert witness, Luther D. Hall, who testified as follows: "It's [the pipe] liable to come off this way, sideways, (indicating)." Apparently, the word is used in the pipe fitter's vernacular to describe a situation where a load of pipe comes off a truck in an unpredictable and uncontrollable manner.

case may be, will discharge the duty to warn. Delhi-Taylor Oil Corporation v. Henry, 416 S.W.2d 390 (Tex.Sup.1967); cert. denied, 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 667 (1967); cert. reh. denied, 390 U.S. 975, 88 S.Ct. 1023, 19 L.Ed.2d 1192 (1968).

■ Taylor, appellant's foreman, had made an inspection of the pipeload before the unloading began and testified that such a method of loading pipe was hazardous. He testified that based upon his knowledge and past experience that it is an unsafe practice to load small pipe inside of larger pipe. Therefore, Taylor, by his testimony and graphic drawing, demonstrated that he had full knowledge of the method and manner in which the pipe were loaded and that the condition as presented involved risk and danger. This knowledge of the unsafe and hazardous condition of the pipe load would necessarily include the specific danger of the propensity of the pipe to "swarm." At that point in time Taylor's knowledge and appreciation of the condition and danger inherent in the way the pipe were loaded would be equivalent to that of the appellee and would discharge any duty on the part of appellee to warn him. There is no evidence to refute the supervisor's testimony as to his knowledge and appreciation before any pipe had been unloaded. Taylor did testify that after he had helped to unload two joints of pipe, "I seen that the load was not going to shift, it looked to be safe and so I got down from the truck and I gave the bar to George Atchison and instructed him to get up and help finish with the unloading." However, the foreman's subsequent acts of helping to unload two joints of pipe were after he had full knowledge of the risk involved and would not impose a duty to warn where that duty, as a matter of law, no longer existed.

That Taylor's knowledge and appreciation of the danger, as appellant's supervising foreman, would discharge any duty owed appellant by appellee is settled by the case of Delhi-Taylor Oil Corporation v. Henry, supra, wherein it is stated at page 394:

". . . While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees."

" * * * * *"

". . . To impose the duty on the owner or occupier of the premises to know and to warn every workman on the project of a dangerous condition would subject him to an impossible burden. . . ."

Appellee should not be put under the onerous burden of warning each employee of the independent contractor when the danger was as well known to the supervisor or foreman of the contractor as it was to the landowner, or occupier of the premises. Tyler v. McDaniel, 386 S.W.2d 552 (Tex. Civ.App.—Dallas 1965, writ ref'd n. r. e.). Knowledge on the part of the foreman imposed a duty on the independent contractor to warn appellant and discharged any duty to warn on the part of the appellee. Delhi-Taylor Oil Corporation v. Henry, supra. Assuming a duty to warn had initially existed on the part of appellee, this duty was discharged notwithstanding the fact that Taylor may have failed to transmit a warning of the specific danger to appellant. The evidence of the case before us, considered in conjunction with the applicable principles of law enunciated in the *Delhi-Taylor* case, establishes that the knowledge and appreciation of appellant's supervisor discharged any duty, as a matter of law, on the part of appellee to warn appellant.

The evidence reviewed in light most favorable to appellant's position does not present unresolved facts as to the issues

relied upon by appellants. Any duty owed appellant by appellee was discharged as a matter of law and the trial court was correct in directing a verdict against appellant and for appellee. Appellant's sole point of error is overruled.

The judgment of the trial court is affirmed.